IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

JULIE A. BEBERMAN,

                Plaintiff,

v.

U.S. STATE DEPARTMENT and
SECRETARY OF STATE REX TILLERSON,
in his official capacity,

                Defendants.

Civ. No. 17-48

**OPINION**

THOMPSON, U.S.D.J.[1]

## **INTRODUCTION**

This matter has come before the Court upon the Motion to Dismiss Plaintiff's Complaint by Defendants United States Department of State and Secretary of State Rex Tillerson, in his official capacity, (collectively "Defendants"). (ECF No. 9.) Plaintiff Julie Beberman ("Plaintiff") opposes (ECF No. 14) and has also filed a motion for consolidation (ECF No. 12). Defendants oppose Plaintiff's Motion. (ECF No. 13.) The Court addresses these Motions together and has decided them upon the written submissions of the parties, without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated below, Defendants' Motion to Dismiss is granted in part and denied in part, and Plaintiff's Motion to Consolidate is denied.

## **BACKGROUND**

This case arises out of Plaintiff's employment as a Foreign Service Officer within the State Department and the Department's alleged discrimination against Plaintiff, which she claims

---

[1] The Hon. Anne E. Thompson, United States District Judge for the District of New Jersey, sitting by designation.

1

caused her to be denied tenure. Plaintiff has two additional actions in this District related to her employment with the State Department, Civil Action Numbers 14-20 and 17-61.

Plaintiff's Complaint pleads the following four Counts: (1) Discriminatory Denial of Tenure, (3) Visa Office's Discriminatory Animus Proximately Causing Tenure Denial, (4) Discriminatory Conduct of the Young Diplomat Network Proximately Causing Harm and Proximately Causing Tenure Denial, and (5) Retaliatory and Discriminatory Denial of Opportunity to Serve as Backup Consular Officer Causing Harm, Including Proximately Causing Tenure Denial. (*See generally* Compl., ECF No. 1.)[2] Her claims are brought pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 28 U.S.C. § 633a. (*Id.* ¶ 1.)

Plaintiff was commissioned as a Foreign Service Officer with the State Department with a limited five-year career appointment that would expire if not granted tenure. (*Id.* ¶¶ 21–22.) Plaintiff served her first assignment at Embassy Caracas, Venezuela between October 2011 and July 2012. (*Id.* ¶¶ 23, 25.) During her tenure at Embassy Caracas, Plaintiff was reviewed by Deputy Visa Chief Shane Myers, Consul General Dale Rumbarger, and Visa Chief Eric Cohan, who provided two Employee Evaluation Reports ("EERs"). (*Id.* ¶¶ 25–27.) Plaintiff alleges that Myers and Rumbarger discriminated against Beberman as an older woman by including discriminatory comments and falsely negative reviews in her EERs, minimizing her accomplishments, not explaining the basis for their criticism, treating her less favorably than similarly situated younger male colleagues, and not providing her the same training as younger male and female colleagues. (*Id.* ¶¶ 32–35, 39, 41–42, 67, 105.) Plaintiff claims that Myers favored younger male colleagues, including Tom Hwei (*id.* ¶¶ 46–48) and Royce Branch, who

---

[2] Plaintiff's Counts are numbered, but she has not included a "Count 2" in her Complaint, and only pleads Counts 1, 3, 4, and 5.

Myers and Rumbarger recommended for tenure (*id.* ¶¶ 50–53). Plaintiff also claims that Myers told her she had a lower-than-average refusal rate, but never mentioned it in her EERs (*id.* ¶¶ 60–62), and she received an award during that time for her contributions to the Embassy (*id.* ¶ 63). Additionally, Cohan allegedly subjected Plaintiff and another older female colleague to higher scrutiny (*id.* ¶¶ 71–76), denied her access to the consular computer system (*id.* ¶¶ 80–81), accused her of unsupported Visa Lookout Accountability ("VLA") violations but denied her VLA training until the end of her tenure (*id.* ¶¶ 82, 83–85), treated her differently than younger male colleague David Urbia (*id.* ¶¶ 87–88), generally refused her additional work opportunities (*id.* ¶¶ 89–93), and publicly humiliated her (*id.* ¶ 94). Plaintiff also asserts that she was not allowed to complete her Caracas assignment, her Embassy Port of Prince, Haiti assignment was cancelled, and she was instead sent to Washington, D.C. (*Id.* ¶ 107.) Plaintiff asserts that the Summer 2015 Commissioning Tenure Board ("CTB") and Winter 2015 CTB relied on the negative EER comments and her shortened assignment at Embassy Caracas in denying her tenure; thus the discriminatory conduct proximately caused her denial of tenure. (*Id.* ¶¶ 43, 53–56, 109, 115–18.)

Plaintiff also describes the conduct of remote employee David Franz, who was allegedly influenced by his wife, Deputy Chief of Mission to Embassy Caracas, and her views that were formed by Myers, Cohan, and Rubmarger. (*Id.* ¶¶ 122–24.) He allegedly failed to provide VLA training, ignored his conflict of interest, infused himself in the decision-making process regarding VLA violations, and treated older male colleague John Elliot differently than Plaintiff. (*Id.* ¶¶ 135–32.) Plaintiff then received a one-day disciplinary suspension as a result of this discriminatory animus, which she claims also had bearing on her tenure decision. (*Id.* ¶¶ 138–39.)

Plaintiff describes that when she returned to Washington, she was invited to join the Young Diplomats Network ("YDiN"), accepted the invitation, and agreed to serve as AF Coordinator for the African Bureau. (*Id.* ¶¶ 142, 143.) Plaintiff disagreed with other members about the official status of the group and whether State Department approval was necessary for an event. (*Id.* ¶¶ 150–53.) She was allegedly advised to quit if she could not agree that the group was an official entity, and she claims that another member tried to push her out of her AF Coordinator role (*Id.* ¶¶ 155–56, 165–66.) Plaintiff made her own inquiries regarding YDiN's status, after which members ceased communications with her. (*Id.* ¶¶ 160–61, 163–65.) Plaintiff advised YDiN members that she was considering bringing an age discrimination claim, and she now asserts that the group was hostile to her based on her age and discriminated against her systematically, as the Career Development Office allegedly condoned said conduct. (*Id.* ¶¶ 178–84.) She asserts that this too proximately caused her to be denied tenure because her personnel file does not reference her participation in YDiN. (*Id.* ¶ 185.)

Finally, Plaintiff asserts that then-Deputy Assistant Secretary, Marcia Bernicat, held a retaliatory animus against her and had conflicts of interest, and communicated negative information about Plaintiff that was then shared with the Bureau of Consular Affairs, causing her to be denied the opportunity to serve as backup consular at Embassy Malabo and chilling her participation in ADEA activities. (*Id.* ¶¶ 191–96, 198.) She alleges that this chain of events created a negative impression of her with Embassy Malabo and thus during her CTB review. (*Id.* ¶¶ 206–08.)

On February 16, 2016, Plaintiff was denied tenure by the Winter 2015 CTB. (*Id.* ¶ 11.) She then filed a formal complaint with the State Department Office of Civil Rights ("OCR") on August 9, 2016. (*Id.* ¶ 14.) Plaintiff claimed that she was denied tenure based on the "age, sex,

race, national origin, color, sexual orientation, disability discriminatory animus of the raters and reviewers who prepared my employee evaluation reports ('EERs')"; "sex discriminatory animus of the personnel in the Visa Office"; and "the age discriminatory animus of the leaders of the [YDiN]." (*Id.* ¶ 15.) Plaintiff received a notice of the right to file on April 19, 2017 and brought her motion to file a sixth amended complaint in Civ. No. 14-20 with these claims on May 9, 2017. (*Id.* ¶¶ 16–17.) The Court denied Plaintiff leave to amend with respect to these claims. (*Id.* ¶¶ 18–90; ECF Nos. 130, 135 (denying reconsideration of prior opinion).)

On October 16, 2017, Plaintiff filed her Complaint in this action, *pro se*.[3] On January 22, 2018 Defendants moved to dismiss. (ECF No. 9.) On February 1, 2018, Plaintiff moved to consolidate this case with Civ. No. 14-20. (ECF No. 12.) Defendants opposed Plaintiff's motion on February 8, 2018 (ECF No. 13), and Plaintiff opposed Defendants' motion on February 12, 2018 (ECF No. 14). Plaintiff replied to her own Motion. (ECF No. 15.) Both Motions are presently before the Court.

## **LEGAL STANDARD**

I. **Motion to Dismiss**

A motion under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all well-pleaded factual

---

[3] Plaintiff has been represented by counsel for all filings in Civ. No. 14-20.

allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016). The court, however, may disregard conclusory legal allegations. *Fowler*, 578 F.3d at 203. Finally, the court must determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). A complaint which does not demonstrate more than a "mere possibility of misconduct" must be dismissed. *See Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

Although a district court generally must confine its review to the pleadings on a Rule 12(b)(6) motion, *see* Fed. R. Civ. P. 12(d), "a court may consider certain narrowly defined types of material" beyond the pleadings. *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). The Court "may also take into account 'public record[s]' and 'undisputedly authentic document[s] that a defendant attaches as . . . exhibit[s] to a motion to dismiss if the plaintiff's claims are based on the document' when ruling on a 12(b)(6) motion." *Bostic v. AT&T of V.I.*, 166 F. Supp. 2d 350, 354 (D.V.I. 2001) (alteration in original) (quoting *Pension Benefit Guar. Corp. v. White*, 998 F.3d 1192, 1196–97 (3d Cir. 1993), *cert. denied* 510 U.S. 1042 (1994)).

## II.     Motion to Consolidate

Pursuant to the Federal Rules, a court may consolidate actions where common questions of fact or law are involved. *See* Fed. R. Civ. P. 42(a). "The factors the Court considers in deciding a motion to consolidate are: (1) is the common issue the principle issue, (2) will consolidation cause delay in one of the cases, and (3) will consolidation 'lead to confusion or prejudice in the trial of a case'?" *Ambramsen v. Vilsack*, 2010 WL 2430724, at *1 (D.V.I. June

14, 2010) (quoting *Farahmand v. Rumsfeld*, 2002 WL 31630709, at *2 (E.D. Pa. Nov. 20, 2002)); *see also Fitz v. Islands Mech. Contractor, Inc.*, 2013 WL 775457, at *2 (D.V.I. Mar. 1, 2013). This authority to consolidate is within the district court's broad discretion. *Robinson v. N.J. Mercer Cty. Vicinage-Family Div.*, 562 F. App'x 145, 148 (3d Cir. 2014) (per curiam).

## DISCUSSION

**I.     Motion to Dismiss**

Defendants move the Court to dismiss Plaintiff's Complaint in full. Specifically, Defendants move to dismiss Counts 1–3 for Plaintiff's failure to exhaust administrative remedies; Counts 1, 4, and 5 as untimely; and Counts 1, 3, and 5 for claim splitting. (*See generally* Defs.' Mem., ECF No. 9.)

   A.  Claims Analogous to Civ. No. 14-20

As a threshold matter, many of Plaintiff's allegations appear in her other pending litigation before this Court, and upon the Court's comparison of the Complaints, many of the Counts in this Complaint mirror those filed in her Seventh Amended Complaint in Civ. No. 14-20. Accordingly, the analysis and decisions of the Court in its recent opinion and order dismissing some Counts of Plaintiff's Seventh Amended Complaint (ECF Nos. 150, 151, Civ. No. 14-20), is directly relevant to and applicable law for this Matter.[4]

   1.  *Count 1: Discriminatory Denial of Tenure*

The allegations in Count 1 are very similar to those into Plaintiff's Seventh Amended Complaint in Civ. No. 14-20. Here, Plaintiff describes discriminatory treatment, unfair EERs, a

---

[4] The Court's opinion, referenced in detail below, is also available online: *Beberman v. U.S. Dep't of State*, 2018 WL 1998307 (D.V.I. Apr. 27, 2018).

failure to train, etc. by Cohan, Myers, and Rumbarger. In this Complaint, Plaintiff has added some substantive paragraphs with respect to Myers specifically (*see* Pl.'s Reply at 7, ECF No. 15 (describing additions to conduct described in Count 1, ¶¶ 32–57)), but many paragraphs are identical replications of those in the Seventh Amended Complaint. With respect to the Seventh Amended Complaint and Count 1, the Court found that Plaintiff failed to exhaust administrative remedies timely because the discrimination flowed from the point of actual injury—when she was aware of her injury—but she only timely exhausted administrative remedies following the denial of tenure. *See* 29 C.F.R. § 1614.1059(a), (a)(1) (describing 45-day time limit for filing ADEA complaint); *Winder v. Postmaster Gen.*, 528 F. App'x 253, 255 (3d Cir. 2013) (concluding that failure to adhere to 45-day time period following awareness of actual injury bars claim).

Because Count 1 here, as in the other action, directly focuses on allegedly wrongful conduct and mistreatment by Myers, Rumbarger, and Cohan during her time at Embassy Caracas (*see, e.g.*, Compl. ¶¶ 33, 38, 45, 47–50, 66, 75, 81 (describing examples of allegedly disparate treatment by Cohan, Myers, and Rumbarger that Plaintiff experienced while working at the Embassy)), Plaintiff was injured such that her rights vested, and she should have proceeded on the discrimination claim within 45-days of said conduct. (*See* Op. at 8, ECF No. 150, Civ. No. 14-20.) The denial of tenure was not the appropriate point of injury; it was the point of legal injury. (*See id.* at 7 ("The 45-day clock begins to run at the time of the discriminatory conduct or awareness of actual injury, 'not upon awareness that this injury constitutes a legal wrong.'" (quoting *Winder*, 528 F. App'x at 255)).)[5] Additionally, as the Court already found, Plaintiff's

---

[5] This issue is discussed again in greater detail with respect to theories of liability and the discovery rule later in the Court's opinion. *See infra* Section I.B.

Count 1 is not entitled to equitable tolling because she provides no evidence she was misled, and her narrative regarding the discriminatory animus contradicts any claims that her supervisors attempted to obscure the nature of their conduct. (*Id.* at 11.) Accordingly, Count 1 must be dismissed.

    2. *Count 3: Visa Office's Discriminatory Animus Proximately Causing Tenure Denial*

Count 3, on the other hand, is word-for-word identical to Count 3 in Plaintiff's Seventh Amended Complaint, comprised of the same title, same number of paragraphs, and same allegations. (*Compare* Compl. ¶¶ 121–40, *with* Seventh Am. Compl. ¶¶ 195–214, ECF No. 137, Civ. No. 14-20.) Count 3 pleads discriminatory animus, mistreatment, and conflict of interest by Franz.

The Court found that Plaintiff failed to exhaust administrative remedies on this claim because the allegedly discriminatory conduct and thus injury arose long before Plaintiff's tenure decision, and equitable tolling was not justified. (*See* Op. at 8, 10–11, ECF No. 150, Civ. No. 14-20.) The Court also dismissed Count 3 because Plaintiff failed to state a claim for retaliation. *See Daniels v. Sch. Dist. of Phila.*, 776 F.3d 191, 193 (3d Cir. 2015) (describing three elements to a prima facie case of retaliation in the employment discrimination context: "(1) [that she engaged in] protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."). Plaintiff's attempt to bolster her discrimination claim by comparing herself to Elliot, an *older* male colleague, did not present a legally sufficient comparator for an ADEA claim, and the Court could not infer, based on her allegations, that Franz's conduct proximately caused her denial of tenure. (Op. at 15–16, ECF No. 150.) On balance, Count 3 must be dismissed.

9

3. *Count 5: Retaliatory and Discriminatory Denial of Opportunity to Serve as Backup Consular Officer, Causing Harm, Including Proximately Causing Tenure Denial*

Count 5 is again a word-for-word identical replication of Count 4 of Plaintiff's Seventh Amended Complaint. (*Compare* Compl. ¶¶ 187–210, *with* Seventh Am. Compl. ¶¶ 215–38, ECF No. 137, Civ. No. 14-20.) Like Count 4 in the other case, Count 5 here pleads facts related to the denial of the opportunity to serve as a back-up consular officer and its negative repercussions. Plaintiff also alleges that she was denied that opportunity in discrimination and retaliation, and her participation in ADEA claims was chilled. In its opinion on Defendants' motion to dismiss in Civ. No. 14-20, the Court concluded that she failed to state a claim for discrimination because the adverse effect of losing this opportunity was too speculative to qualify as an adverse action by the employer, a required element of a prima facie case for discrimination. (*See* Op. at 14, 17–18, ECF No. 150.) Adverse action typically involves "hiring, firing, failing to promote, reassignment or a decision causing a significant change in benefits." *Sherrod v. Phila. Gas Works*, 57 F. App'x 68, 73 (3d Cir. 2003) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). To assume that not serving as a back-up consular was adverse and bore on her tenure denial requires the Court to make undue speculation in Plaintiff's favor. (Op. at 18, ECF No. 150.) Once again, although Defendant did not move the Court on this basis, the analysis holds. Count 5 must be dismissed.

B. <u>Cat's Paw Theory</u>

Plaintiff urges the Court to adopt a cat's paw theory for all claims. (Pl.'s Opp'n at 8, ECF No. 14.) As adopted by the Third Circuit in the employment context, including ADEA claims, *see Patel v. Shinseki*, 984 F. Supp. 2d 461, 476 (W.D. Pa. 2013) (citing *Abramson v. William Patterson Coll. of N.J.*, 260 F.3d 265, 285 (3d Cir. 2001)), a plaintiff may "proceed

under a cat's paw theory if a supervisor exhibiting discriminatory animus influenced or participated in a decision to take an adverse employment action and if such animus was a proximate cause of the ultimate decision." *Sterrett v. Giant Eagle, Inc.*, 681 F. App'x 145, 151 (3d Cir. 2017) (citing *McKenna v. City of Philadelphia*, 649 F.3d 171, 172, 177–80 (3d Cir. 2011); *Staub v. Proctor Hosp.*, 562 U.S. 411, 420 (2011)); *see Bethea v. Merchants Cmty. Bank*, 2014 WL 4413045, at *10 (D.V.I. Sept. 8, 2014) ("[A]n employer can be liable for employment discrimination when the ultimate decision-maker is influenced by the discriminatory animus of another employee who intended to and does proximately cause an adverse employment action."). It applies where prior discriminatory "animus b[ears] a direct and substantial relation" to later adverse action, such that the later action "was not independent and was foreseeable." *McKenna*, 649 F.3d at 179.

Cat's paw, however, is a theory of liability and causation—specifically a test of liability through proximate cause. *Id.* at 177. It is used to satisfy a prima facie case of discrimination at summary judgment. *See, e.g.*, *Sterrett*, 681 F. App'x at 152; *Nouri v. Pa. State Univ.*, 2015 WL 4066942, at *16 (M.D. Pa. July 2, 2015). It is not a theory of when to define injury. The conduct detailed in the Complaint demonstrates that Plaintiff was aware of her injury, and importantly, experienced some actual injury much earlier than the date on which she was denied tenure. While the denial of tenure is a form of injury and may have been influenced by earlier EERs by her supervisors at Embassy Caracas, that does not negate the distinction between legal and actual injury previously discussed by the Court. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1358 (3d Cir. 1994); *see also Winder*, 528 F. at 255.[6] Therefore, cat's

---

[6] Recently, the Third Circuit decided *Rotkiske v. Klemm*, 890 F.3d 422 (3d Cir. 2018), in which the court cautioned against implying a discovery rule into a federal cause of action where the statute has not so provided. 890 F.3d at 428. *Rotkiske* dealt with application of the Fair Debt

11

paw does not disturb the Court's conclusion that Plaintiff failed to exhaust remedies and timely pursue a claim on the actual discriminatory conduct of which she complains.

C. Claim Splitting

Plaintiff asserts that she has not engaged in deliberate claim splitting in filing this Complaint; rather, she has added claims she was not permitted to bring in her other case, and accordingly, by opposing her amendment in Civ. No. 14-20, Defendants implicitly acquiesced to this Complaint. (*See* Pl.'s Opp'n at 6, ECF No. 14.) The Court need not assess Defendants' assertion of claim splitting, having already observed that Plaintiff did in fact identically replicate or nearly replicate three Counts of the Seventh Amended Complaint in this Complaint and applied the analysis and rationale on which the Court dismissed these Counts in Civ. No. 14-20.

D. Count 4 Analysis

Defendants argue that Count 4 of Plaintiff's Complaint, "Discriminatory Conduct of the Young Diplomat Network Causing Harm and Proximately Causing Tenure Denial," should be dismissed as untimely. A complainant who has filed a complaint under the ADEA may file a civil action in a U.S. District Court "[w]ithin 90 days of receipt of the Commission's final decision on an appeal." 29 C.F.R. § 1614.407(c); *see also Gillead v. Napolitano*, 2014 WL 10212965, at *3 (D.V.I. May 20, 2014) ("This Court agrees and finds that when federal employees bring a civil action after pursuing administrative remedies under the ADEA, the action must be brought within 90 days of the final agency action."), *report and recommendation adopted as modified* 2015 WL 4751132 (D.V.I. Aug 11, 2015). Though strictly construed, "[t]he

---

Collection Practices Act, but generally "cast doubt on whether the discovery rule remains applicable to ADEA claims." *Margolis v. Warner Chilcott (US) LLC*, 2018 WL 2455925, at *5 (D.N.J. May 31, 2018). Like in *Margolis*, however, this caution does not alter the Court's conclusion: Plaintiff experienced actual injury while employed at the Embassy and failed to timely exhaust remedies on that conduct.

90-day period for filing the action is treated as a statute of limitations." *Carter v. Potter*, 258 F. App'x 475, 477 (3d Cir. 2007). Accordingly, unlike a jurisdictional requirement, the time period is subject to equitable tolling. *Gillead*, 2014 WL 10212965, at *4 (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982); *Carter*, 258 F. App'x at 477); *see also Smith v. Henderson*, 137 F. Supp. 2d 313, 317 (S.D.N.Y. 2001). "Under equitable tolling, plaintiffs may sue after the statutory time period for filing a complaint has expired if they have been prevented from filing in a timely manner due to sufficiently inequitable circumstances." *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999) (applying equitable tolling to EEOC 90-day filing period).

Count 4 was ripe for filing in a judicial forum as of August 11, 2016, following the final disposition of Plaintiff's agency action, appeal thereof, and request for reconsideration. (*See* Defs.' Mem. at 9 (describing sequence: final decision issued October 23, 2014, appeal decision issued May 6, 2016, reconsideration denied August 11, 2016); *see also* Decision on Request for Reconsideration, Defs.' Ex. E, ECF No. 10-5 (dated August 11, 2016); Mot. to File Fifth Am. Compl., ECF No. 103, Civ. No. 14-20 (dated November 8, 2016).) Accordingly, Plaintiff had 90 days therefrom to file a complaint. The Court acknowledged that Plaintiff timely raised her YDiN claims upon filing of her Fifth Amended Complaint, within the 90-day period following the final agency decision on this issue. (Mem. Op. at 4, ECF No. 135, Civ. No. 14-20.)[7] The Court issued its Opinion on the Fifth Amended Complaint on September 1, 2017, denied reconsideration on October 13, 2017, and Plaintiff filed this Complaint on October 16, 2017.

Therefore, this case begs whether Plaintiff is entitled to equitable tolling in light of the

---

[7] The Court notes that it misstated the correct date of filing in its prior opinion. (*See* Pl.'s Opp'n at 11 n.2.) Plaintiff's Motion to File a Fifth Amended Complaint was filed November 8, 2016.

13

circumstances. She essentially argues that her timeliness in filing in her other case should be extended to this action. (*See* Pl.'s Opp'n at 11.) The Court is satisfied that the interests of equity warrant tolling for this Count. Plaintiff did in fact timely assert her rights and acted diligently to preserve her claim. *See, e.g.*, *Niskey v. Kelly*, 859 F.3d 1, 7 (D.C. Cir. 2017) (noting that whether a plaintiff "has been pursuing his rights diligently" is a factor to consider in the equitable tolling analysis (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010))); *Smith*, 137 F. Supp. 2d at 319. Time passed due to the pending appeal and the Court's decision-making process. She immediately sought review of the Court's decision to deny leave to amend on the YDiN claim, and then immediately initiated this action with Count 4 after reconsideration was denied. This situation is more akin to one where plaintiff "was prevented from asserting her rights," or where "the plaintiff timely asserted her rights in the wrong forum." *Seitzinger*, 165 F.3d at 240.

On balance, Plaintiff's Count 4 survives: equity justifies tolling the 90-day time between the filing of the Fifth Amended Complaint in Civ. No. 14-20 and the filing of the instant Complaint.

## II. Motion to Consolidate

Plaintiff moves the Court to consolidate this action with Civ. No. 14-20 in an effort to streamline her litigation because both cases involve common questions of law and fact, some duplicative allegations and claims, and the same parties and counsel. (*See generally* Pl.'s Mot. Consol., ECF No. 12.) In opposition, Defendants argue that not only is this motion ironic, but Civ. No. 14-20 is fully briefed, Counts 1–3 of Plaintiff's claim should be dismissed, and the Court already concluded that Count 4 is irrelevant to Civ. No. 14-20. (*See generally* Defs.' Opp'n, ECF No. 13.)

While these cases involve the same parties, substantially similar events and claims—and

therefore common questions of law and fact—it would not be suitable to combine these actions. Through Plaintiff's fifth and sixth motions to amend in 14-20, she attempted to include allegations of discrimination related to her first EER review at Embassy Caracas, October 2011 to July 2012, and allegations related to her involvement in the Young Diplomats Network. (*See* Sixth Am. Compl. ¶¶ 79–104, 115–27, 151–67, 216–60, ECF No. 109-2, Civ. No. 14-20; *see also* Pl.'s Reply at 4–5.) The Court, however, declined to permit Plaintiff to amend to include these allegations and upheld that decision on reconsideration. (*See* Op. at 8, ECF No. 129 (declining to permit amendment with "new claims based on facts that she knew or should have known prior to the original filing of the original Complaint . . . due to excessive delay and prejudice"); *see also* Op. at 4, ECF No. 135 (declining to reconsider amendment for YDiN claim on prejudice grounds because it "introduces a new claim, 'not directly related to the original claim, pertain[ing] to different facts and individuals'" (quoting Op. at 8, ECF No. 129)).) It follows that Plaintiff's attempt to consolidate these actions is an attempt to work-around the Court's prior holdings.

Moreover, based on the foregoing analysis, only Count 4 of the Complaint remains, which is not wholly duplicative or redundant of the claims in her other civil actions, so the concerns Plaintiff raises related to "conflicting results" are inapplicable. (Pl.'s Reply at 9.) Accordingly, Plaintiff's Motion is not in good faith[8] and to consolidate would prejudice to the Defendants as the Court already found. For these reasons, the Court declines to consolidate.

---

[8] Despite the Court's conclusion on this score, it declines to consider Defendant's allusion to sanctions. Federal Rule of Civil Procedure 11 prescribes specific requirements for a motion for sanctions, not followed in this instance. And, while not made in good faith, the Court cannot conclude at this juncture that Plaintiff's conduct would warrant the imposition of sanctions.

## CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss is granted in part and denied in part, and Plaintiff's Motion to Consolidate is denied. An appropriate Order will follow.

Date: August 9, 2018

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.